# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PHILLIP D. JOHNSON, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:09-CV-1767-VEH |
| | ) |
| **DIRECTV, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Plaintiff Phillip D. Johnson ("Mr. Johnson") initiated this personal injury lawsuit against Defendant DIRECTV, Inc. ("DIRECTV")[1] on September 2, 2009. (Doc. 1). In this case, Mr. Johnson maintains that he was injured due to a motor vehicle collision caused by one of DIRECTV's drivers, Gregory Alan Kasinger ("Mr. Kasinger"), on May 7, 2009. (Doc. 1¶ 5).

---

[1] Based upon earlier filings by Defendant, the court entered a show cause order (Doc. 38) on March 28, 2011, directing Mr. Johnson to show cause "why DIRECTV Home Services, Inc. should not be substituted for DIRECTV, Inc. in this lawsuit." (Doc. 38 at 2). Subsequently, on April 5, 2011, Defendant filed a corrected corporate disclosure (Doc. 39) which states in pertinent part that "[t]he correct name for the Defendant in this case <u>is</u> DIRECTV, Inc." (*Id.* at 2 (emphasis added)). Mr. Johnson concurs with this as evidenced by his response to the show cause order (Doc. 41) filed on April 6, 2011.

Pending before the court is DIRECTV's Motion for Partial Summary Judgment (Doc. 31) (the "Partial Motion") filed on March 1, 2011. DIRECTV also filed its supporting brief on March 1, 2011. (Docs. 32).

On March 22, 2011, Mr. Johnson opposed the Partial Motion. (Docs. 36-37). DIRECTV followed with its reply (Doc. 39) on April 5, 2011, and now the Partial Motion is now under submission. For the reasons explained below, the Partial Motion is **GRANTED IN PART** and otherwise is **DENIED**.

## II.   FACTUAL BACKGROUND[2]

Mr. Kasinger was driving a DIRECTV van at the time of the wreck made the basis of this suit. (Doc. 31-1 at 39). The accident occurred at the four-way intersection of DeKalb County Roads 47 and 102 in Alabama. (*Id.* at 69). Mr.

---

[2] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy. Also, facts that are not material to the court's ruling on summary judgment (such as, *e.g.*, those relating to Mr. Kasinger's background) have not been included in this background. Finally, these facts are taken from DIRECTV's narrative summary of undisputed facts and Mr. Johnson's opposition. (*See* Doc. 32 ¶¶ 1-6, 12-21; Doc. 36 at 2 ¶ 3; Doc. 36 at 3-5 ¶ 13; Doc. 36 at 7 ¶ 2).

Kasinger indicated that he had traveled "through [that area] several times" and knew that "you have to scoot up to be able to see County Road 47." (Doc. 37-1 at 61).

Mr. Kasinger stopped at the stop sign on County Road 102 before the accident occurred. (Doc. 31-1 at 61). At the stop sign, Mr. Kasinger indicated that he looked both ways before proceeding into the intersection. (*Id.*). Mr. Kasinger then entered the intersection and collided with Mr. Johnson's motorcycle. (Doc. 31-1 at 83). Mr. Kasinger testified that he did not see Mr. Johnson on his motorcycle before entering the intersection. (*Id.* at 56).

Mr. Kasinger had his personal Global Positioning System ("GPS") device with him in the DIRECTV van on the day of the accident. (Doc. 31-1 at 42). Mr. Kasinger has testified he was not programming or "fiddling" with his GPS device at the time of the collision. (*Id.* at 56).

Two witnesses to the wreck, Mr. Daniel Brown ("Mr. Brown") and his wife, Marilyn Brown ("Mrs. Brown"), gave somewhat differing accounts of what they saw in terms of Mr. Kasinger's stopping before entering the intersection. Mr. Brown recalled Mr. Kasinger stopped at the stop sign controlling the intersection before the collision happened. (Doc. 31-2 at 33-34). Mrs. Brown, on the other hand, testified that Mr. Kasinger stopped at the stop sign, pulled slightly over to the shoulder of the road, and then proceeded directly through the intersection without stopping at the

leading edge of County Road 47.  (Doc. 37-2 at 27, 30).

Mr. Brown was on the scene of the accident immediately after it occurred, and spoke to Mr. Kasinger about it.  (Doc. 31-2 at 17)  Mr. Kasinger told Mr. Brown that before the accident he had been on the phone trying to reach either a customer or his employer and, after he got off the phone, he typed the customer's address into his GPS.  (Doc. 31-2 at 17).  Mr. Brown initially said it was his "impression" that Mr. Kasinger was punching in the address as he was going through the intersection.  (*Id.*). However, as Mr. Brown recounted specifically what Mr. Kasinger told him, he remembered, "[Kasinger] said look, man, I was looking for an address and I couldn't find it, and you know how I was sitting there and I was punching it in the Garmin is kind of how I vaguely remember we had that conversation."  (Doc. 31-2 at 59).

Mr. Brown further explained his recollection: "[Kasinger] was telling me the sequence, you know, he was at the stop sign. He was on the phone trying to get the correct address basically what I can recollect that he told me. . . .  I remember him telling me he was at the stop sign trying to make a phone call to find out where the address was with the owner or his boss, all right, and he was scrolling through his Garmin trying to find the address . . . ."  (*Id.* at 60).  Mr. Brown acknowledged that he was not entirely certain when Mr. Kasinger was describing his use of his phone or his GPS, agreeing that Mr. Kasinger may have been referring to actions he had taken

before even arriving at the intersection. (*Id.* at 62).

Mrs. Brown similarly testified that Mr. Kasinger told them that he "was programming [his] Garmin" and "looking for an address" while he was at the stop sign. (Doc. 37-2 at 15). Mrs. Brown also testified that she remembers observing Mr. Kasinger's hands moving within his vehicle. (*Id.*).

## III. STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## IV.   ANALYSIS

### A.   Uncontested Matters

In responding to the Partial Motion, Mr. Johnson has "stipulate[d] to the dismissal of his negligent/wanton hiring, training and supervision claims as well as his negligent/wanton entrustment claim[.]" (Doc. 36 at 1).  Accordingly, the Partial Motion is **GRANTED** with Mr. Johnson's consent as to those particular portions of the complaint, and his negligent/wanton entrustment claim (*i.e.*, Count III) as well as his negligent/wanton hiring, training and supervision claim (*i.e.*, Count IV) are **HEREBY DISMISSED WITH PREJUDICE**.

### B.   Contested Matter

Mr. Johnson challenges the portion of the Partial Motion which seeks summary judgment on his wantonness claim.  (Doc. 36 at 1; *see also* Doc. 1 at 4 ("**Count II** [for] **Wantonness**") (underlining omitted)).  DIRECTV contends that Mr. Johnson has not produce sufficient evidence which could support his claim for wantonness.  (Doc. 32 at 10).  In sum, DIRECTV explains that wantonness under Alabama law requires satisfaction of the element of consciousness and argues that "[t]here is no evidence that Mr. Kasinger *consciously* appreciated the risk of an injury-causing accident when he entered the intersection." (Doc. 32 at 11).

The court agrees with DIRECTV that wantonness includes more than just a

heightened level of awareness under Alabama law. *See, e.g., Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004) ("Wantonness is not merely a higher degree of culpability than negligence.") (internal quotations and citations omitted). As the Supreme Court of Alabama explained wantonness in *Scott v. Villegas*, 723 So. 2d 642 (Ala. 1998):

> In *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala.1998), this Court clarified the definition of "wantonness":
>
>> "'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)."
>
> Wantonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability. *See Ex parte Anderson*, 682 So. 2d 467, 469 (Ala. 1996); *see, also, George v. Champion Ins. Co.*, 591 So. 2d 852 (Ala. 1991). "<u>The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence</u>." *Hamme v. CSX Transp., Inc.*, 621 So.2d 281, 283 (Ala. 1993).

*Scott*, 723 So. 2d at 642 (emphasis added). Where the court parts with DIRECTV is on the issue of whether Mr. Johnson has adduced sufficient evidence such that his wantonness claim should be tried to a jury.

More specifically, regarding Mr. Kasinger's use of his GPS and whether this caused him to be distracted when driving into the intersection, DIRECTV suggests that still his "actions do not rise to the level of wantonness." (Doc. 32 at 13). In pressing this position, DIRECTV relies heavily upon *Wilson v. Cuevas*, 420 So. 2d 62 (Ala. 1982), *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007), and *Jinright v. Werner Enterprises, Inc.*, 607 F. Supp. 2d 1274 (M.D. Ala. 2009).

Although it does involve a motorcycle accident, *Wilson* is substantially different, both procedurally and substantively, from this case. First, from a procedural standpoint, the dismissal of the wantonness claim by the trial court which the Supreme Court of Alabama affirmed on appeal in *Wilson* was disposed of by way of a directed verdict <u>after all the evidence at trial was heard</u>. *Id.*, 420 So. 2d at 63 ("Plaintiffs' count alleging wanton conduct did not survive defendant's renewed motion for a directed verdict at the close of all evidence."). Second, substantively, *Wilson* did not involve a set of facts from which a jury could reasonably conclude that the driver who caused the accident was looking away from the road and using his GPS (or other electronic device) as he traveled into a familiar intersection where the collision occurred without stopping a second time to compensate for a known blocked view.

In *Ex parte Essary*, in a split decision (Cobb, C.J., dissenting; Woodall, J.,

concurring in the result), the Supreme Court of Alabama upheld the trial court's decision to grant summary judgment in the defendant's favor on wantonness in a motion vehicle collision case involving evidence of a rolling stop at an intersection. *Id.*, 992 So. 2d at 13 ("Instead, Burrell's testimony shows that when Essary reached the intersection, he slowed and made a 'rolling stop.'"); *see id.* ("We reverse the portion of the Court of Civil Appeals' opinion reversing the trial court's judgment on the wantonness claim and we render a judgment in favor of Essary on that claim.").

Once again, factually, in *Essary* there was no evidence from which a jury could reasonably conclude that the driver involved in the collision was looking away from the road and using his GPS (or other electronic device) as he traveled into a familiarly dangerous intersection without taking measures to address the known obstructed view by stopping at a spot where his ability to see would not be impaired. Also, in applying Alabama's self-destructive behavior presumption to the situation in *Essary*, the court explained:

> The facts here presented do not establish any basis from which to conclude that Essary was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. <u>Nor is the act as described by Burrell so inherently reckless that we might otherwise impute to Essary a depravity consistent with disregard of instincts of safety and self-preservation.</u> We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that Essary was conscious that injury would likely

or probably result from his actions.

*Ex parte Essary*, 992 So. 2d at 12 (emphasis added).

Thus, *Essary* explains that, separate from evidence that a driver lacks normal mental capacities, certain actions, taken while driving, may be so inherently dangerous that Alabama's self-destructive behavior presumption is inapplicable or overcome. *Essary* also expressly recognizes that "[t]he determination whether a defendant's acts constitute wanton conduct depends on the facts in each particular case." *Id.*, 992 So. 2d at 10 (citing *Ex parte Anderson*, 682 So.2d 467, 470 (1996)).

*Jinright* likewise is inapposite to the facts in this case. Specifically, in *Jinright*, there was "a <u>total</u> lack of evidence from which the jury could reasonably infer wantonness." *Id.*, 607 F. Supp. 2d at 1276 (quoting *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992)) (emphasis added). In sharp contrast, here, sufficient evidence of wantonness exists including Mr. Kasinger's admitted familiarity with the dangerous intersection as well as non-party eyewitness testimony from which a jury could reasonably conclude that Mr. Kasinger entered the intersection without stopping a second time at a spot suitable to look out for other vehicles and while he was distracted by using his GPS.

In sum, the court finds that the material facts before it are significantly distinguishable from those in *Wilson*, *Essary*, *Jinright*, and the other authorities cited

by DIRECTV. Critically absent from DIRECTV's opening brief and its reply is any comparable authority (and this court is unaware of any) in which the Supreme Court of Alabama has ruled that a driver, whose statements made to other witnesses at the scene of the accident as well as those witnesses' observations relating to the accident indicate that the driver was distracted from watching the intersection (that he knew had an obstructed view) because he was instead looking down at and/or typing information into a GPS (or other electronic device) and whose actions, according to one witness (*i.e.*, Mrs. Brown), included moving his hands within his vehicle and then never stopping (for a second time) at the critical point necessary to compensate for the obstructed view before entering the dangerous intersection, cannot be liable for wantonness as a matter of law.[3] *Cf. Clark v. Black*, 630 So. 2d 1012, 1016 (Ala. 1993) ("Kalar's testimony, if believed by the jury, would provide clear and convincing evidence that Black, <u>who was familiar with the intersection</u>, and, consequently, the dangers posed to traffic travelling south on Watermelon Road by

---

[3] Therefore, the court disagrees with DIRECTV's assertion that "[n]o evidence controverts" the fact that "Mr. Kasinger looked both ways before proceeding into the intersection." (Doc. 40 at 2). Specifically, Mrs. Brown's testimony indicates that Mr. Kasinger, in fact, failed to stop at a spot beyond the obstructed view point and look both ways before entering the intersection. Of course, a jury may not believe Mrs. Brown's account of the events leading up to the accident, but on a Rule 56 record, this court must assume that the jury will determine all materially disputed facts in Mr. Johnson's favor.

the 'hillcrest' in that road, ignored the stop sign, <u>or, otherwise wantonly entered the intersection</u>.") (emphasis added) (citations omitted).

"In other words, viewing the evidence in the light most favorable to [Mr. Johnson], [the court] conclude[s] that there is substantial evidence from which the jury could find that ["Mr. Kasinger"] acted with a reckless or conscious disregard of the rights or safety of others by consciously driving the automobile" through an intersection that was known by him to have an obstructed view while trying to use his GPS and without properly stopping for a second time before proceeding to enter such intersection "and knowing" under such circumstances that, "injury would likely or probably result." *Scott*, 723 So. 2d at 644. Therefore, the wantonness portion of the Partial Motion is **DENIED**.

V.   **CONCLUSION**

Accordingly, for the foregoing reasons, Defendant's Partial Motion is **GRANTED IN PART**, and Mr. Johnson's counts for negligent/wanton hiring, training and supervision and negligent/wanton entrustment are, with his consent, **HEREBY DISMISSED WITH PREJUDICE**. In all other respects, the Partial Motion is **DENIED**. The court will set this case for a pretrial conference by separate order.

**DONE** and **ORDERED** this the 7th of April, 2011.

*/s/ VEHopkins*
_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge